[Civ. No. 20439.   Second Dist., Div. Three.   Feb. 28, 1955.]

OMA M. BRIDGES et al., Appellants, v. THE COUNTY OF LOS ANGELES et al., Respondents.

Ferguson & Judge and Warren J. Ferguson for Appellants.

Harold W. Kennedy, County Counsel, and Lloyd S. Davis, Deputy County Counsel, for Respondents.

SHINN, P. J.—Oma M. Bridges suffered injuries when she stumbled over an urn which was maintained in the office of the sheriff's substation at Norwalk, California. She and her husband Alvin C. Bridges, brought this action against the county of Los Angeles for damages. Defendant's motion for nonsuit was granted and plaintiffs appeal.

The urn in question was of pottery construction, about 20 inches in height, about 11 inches in diameter and filled with sand. At the time of the accident, it was located in front of and close to the south end of a counter in the office and from 6 to 8 inches from the counter. There was evidence that its accustomed place was south of the counter against the south wall and close to a door in that wall, and also evidence that it usually stood just around the corner from its position at the time of the accident. It rested upon a small fiber mat. Mrs. Oma Bridges entered the office at about 11 a. m. on Monday morning accompanied by her daughter-in-law, Mrs. Joan Bridges. They walked to the counter, where there was conversation with an officer. Mrs. Oma Bridges stood at the counter during this conversation; the urn was close beside her, and when she started to leave her left foot struck the urn, her feet went from under her, slid somewhat on the floor and she fell heavily, seriously injuring a knee.

The action is based upon section 53051 of the Government Code.[1]

---

[1] "§ 53051. A local agency is liable for injuries to persons and property resulting from the dangerous or defective conditon of public property if the legislative body, board, or person authorized to remedy the condition: (a) Had knowledge or notice of the defective or dangerous condition. (b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition."

Althought the pleadings presented the issue whether the urn in its described location constituted a dangerous condition of public property, it was not urged by the county at the trial and is not urged on the appeal that there was insufficient evidence to have justified a finding that a dangerous condition existed. We therefore express no opinion on the point.

The pivotal questions in the case are whether the urn was placed in front of the counter by someone who possessed authority which would constitute his act, the act of the county or, in the alternative, whether it was placed there by someone else and its position had been known by, or had existed for a sufficient time to impute knowledge to a person ''authorized to remedy the condition.''

█ If the placing of the urn was due to the action of someone acting under authority delegated by the board of supervisors, knowledge of the condition would have been imputed to the county since it would have been the act of the county. (*Wise* v. *City of Los Angeles,* 9 Cal.App.2d 364, 368 [49 P.2d 1122, 50 P.2d 1079].)

█ We are of the opinion, however, that there was insufficient evidence to have justified a finding that the county created the condition. The evidence was that on Sunday, the day preceding the accident, the office floor had been cleaned and waxed by one Earl Davidson, a trusty, then making his temporary abode in or about the substation. Pursuant to section 25358 of the Government Code,[2] the board of supervisors had provided for the maintenance of the substation. As authorized by section 25359 of the code, Davidson was performing work upon a public building for the benefit of the county. Captain McLaughlin, a deputy sheriff, at that time a lieutenant, was the delegated representative of the sheriff to supervise the general conduct and maintenance of the station. He caused the assignment of Davidson to clean, wax and polish the floor, and he testified that in this process the urn would have to be moved. He also volunteered the statement in his testimony that the trusty had stated that he had placed the urn in its position in front of the counter. A motion to strike out the testimony as to this statement of the trusty was denied. We think the motion should have been granted. The trusty was not an employee of the county. He was rendering a service to the county while he was

---

[2] ''The Board shall provide all necessary officers, employees, attendants, and supplies for the proper maintenance of the county buildings.''

actually engaged in his work, but the special relationship which existed during that time ended the instant he ceased work. He could do only what he was directed to do and when he was through, for the time being, he was no more qualified to bind the county by his statements than would have been any other prisoner not engaged in rendering services for the county. (See *Taylor* v. *Bernheim,* 58 Cal.App. 404, 408 [209 P. 55] ; *West Coast Life Ins. Co.* v. *Crawford,* 58 Cal.App.2d 771, 785 [138 P.2d 384] ; 31 C.J.S. p. 1121; 19 Cal.Jur.2d p. 185.) Since it was in evidence that Davidson's work was done on Sunday and no evidence that McLaughlin was at the station on Sunday, we think it must be concluded that the statement of Davidson was made some time later. Insofar as the statement purported to account for the placing of the urn it was pure hearsay as to the county; it was indefinite as to when the urn was placed in front of the counter, and was entitled to no weight as evidence of any fact in issue.

▇ The next question is whether there was indirect evidence sufficient to justify a finding that the urn was in the described position for a sufficient length of time to be discovered by a person who was authorized to remedy the condition. Considering first the latter phase of the problem, we are of the opinion that Lieutenant McLaughlin was a person authorized to remedy the condition, and that if the urn was in its location for sufficient time for him to discover it in the course of reasonable observation of conditions in the office, notice should have been imputed to the county. He had not only the authority but the duty to see that the station was properly maintained; notice to him would have been sufficient; notice to anyone higher in authority would have been superfluous.

The final question is one of considerable difficulty. It is whether the evidence would have justified a finding that Davidson placed the urn in front of the counter while he was waxing the floor on Sunday. This question required the weighing of the reasonable probabilities. ▇ Needless to say, on this appeal from a judgment of nonsuit, all reasonable inferences are to be indulged in favor of the plaintiffs. Such inferences are to be preferred above those which are adverse to the plaintiffs, even though they be equally reasonable. The rule is the same as if plaintiffs had prevailed in the action and the question on appeal was whether there was substantial evidence to support a finding of the court or an

implied finding of a verdict that the urn had been placed in front of the counter on Sunday. ██ The question is narrowed to the inquiry whether it was reasonably probable that Davidson moved the urn to its position before the counter on Sunday. In order to clean and wax the floor thoroughly it would be necessary to move the urn. There was no evidence, direct or indirect, of any other reason for moving the urn. Davidson was the only person who had occasion to move it, and since it was moved, it was more logical to believe that he moved it than to believe that it was moved by someone else who had no occasion to move it. It was not a light object which might have been moved accidentally or unintentionally. It was also reasonable to believe that when the urn was moved it was moved to the place in front of the counter where it was next seen. The county says that there was no evidence as to who moved the urn, or when it was moved, and that an answer to these questions would involve nothing but guesswork and speculation. We do not agree. Certain facts were established from which it could have been inferred that the urn was moved by Davidson and no facts which indicated that it had been placed in front of the counter by someone other than Davidson. It was possible that some deputy sheriff or some of the numerous visitors might have moved the urn, but we can conceive of no reason why they should have done so. And this suggests the question—if Davidson did not move it, who did move it? Here we enter the field of pure speculation. The probabilities all seem to favor the plaintiffs' contention, and, this being true, we think the factual question should have been left to the jury. It is our opinion that if the case had gone to the jury and a verdict in favor of the plaintiffs had been returned, it could not properly have been said there was insufficient evidence to justify the implied finding that the dangerous condition had existed for sufficient time to charge a responsible representative of the county with notice of its existence and to give him ample opportunity to remedy the condition.

There are no other questions which call for decision.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 27, 1955.