[Civ. No. 21208.   Second Dist., Div. One.   Feb. 14, 1956.]

HOWARD LEON INGRAM, a Minor, etc., et al., Respondents, v. BOB JAFFE COMPANY (a Corporation) et al., Defendants; ALLEN TUFELD, Appellant.

Pacht, Ross, Warne & Bernhard, Isaac Pacht, Leo Altshuler and Harvey M. Grossman for Appellant.

Morrison, Simon & McKinsey and T. W. McKinsey for Respondents.

WHITE, P. J.—Defendant Allen Tufeld has appealed from a judgment rendered against him jointly and severally with the other defendants. The other defendants have not appealed. They are Elnora Thompson, the driver of a 1940 Buick automobile, Sarah Jenkins, sister of Elnora, and Fred Jenkins, the husband of Sarah and the person who purchased said automobile from Tufeld. Sections 177 and 178 of the Vehicle Code had not been complied with and Tufeld was "liable and responsible for the . . . injury to person . . . resulting from negligence in the operation of such vehicle . . . by any person using or operating the same with (his) permission, express or implied, . . . and the negligence of such person shall be imputed to (him) for all purposes of civil damages." (Veh. Code, § 402, subd. (a).)

Appellant urges that the evidence is insufficient to support the finding of negligence on the part of the defendant Elnora Thompson. In his opening brief he states, "It is undisputed that the automobile driven by Mrs. Thompson struck the plaintiff. But that fact alone does not prove negligence on the part of said defendant." Much of the brief is concerned with the preponderance of the evidence. That portion of his argument should have been, and no doubt was, addressed to the trial court. The question to be determined on appeal is whether there is any substantial evidence in the record contradicted or uncontradicted to support the finding attacked.

The driver, Elnora Thompson, was personally served with summons and complaint, failed to appear and answer, and her default was duly entered. Elnora's failure to appear and answer was a confession that all the material facts alleged in the complaint were true. (*Freeze* v. *Salot,* 122 Cal. App.2d 561, 566 [266 P.2d 140] ; 14 Cal.Jur. 887, § 19.) She

did not appear as a witness. Howard Ingram, the minor plaintiff who was injured when the Buick collided with his bicycle, did testify fully as to the circumstances surrounding the collision as he saw it. ■ Briefly stated, the Buick was stopped on 19th Street about three feet before it reached the boulevard stop at the entrance into Orange Street in Long Beach. When Howard was riding his bicycle north on the west or left side of Orange about 35 feet south of the south curb line of 19th Street, Elnora was looking down inside the automobile and Howard noticed that the engine was not running. Before he entered the intersection, she looked toward him and followed him with her eyes until he started to go in front of the Buick. The engine was still dead then and she appeared to be watching him. When he was directly in front of the Buick, she looked back down toward the dashboard and Howard looked straight ahead. Before he cleared the car, the engine roared and the car jumped out and struck him.

The evidence here stated and other evidence appearing in the record supports the finding of the driver's negligence. An automobile with a dead engine does not ordinarily come to life and jump from behind a boulevard stop sign into a through street with such speed as to collide with one passing in front of it unless its driver has been negligent. It is undisputed that no one interfered in any way with Elnora's control of the automobile.

In appellant's opening brief, he states: "We do know that the car then suddenly lurched forward and struck the plaintiff. The how or why of this sudden movement of this automobile has never been explained by plaintiffs and no evidence has been offered on that subject at all. We all know that an automobile may be started in motion suddenly without any negligence of any kind on the part of the driver. The gears may suddenly mesh, even though the gears have been left in a neutral position. Sometimes the brakes or the clutch may fail. What appears to be a dead battery may suddenly come to life. There may be other mechanical failures over which the driver has no control."

The court is not authorized to indulge in surmises as to the possibility of mechanical failure; and the circumstances surrounding the collision in the instant action do support the finding that the driver was negligent.

■ "Whether or not the doctrine of last clear chance applies in a particular case depends entirely upon the exist-

ence or nonexistence of the elements necessary to bring it into play. Such question is controlled by factual circumstances and must ordinarily be resolved by the fact-finder." (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 619 [255 P.2d 785].)

In the instant action, that Howard was riding his bicycle on the left side of Orange in violation of the statute is not disputed. The court found, however, that Elnora had the last clear chance to avoid the collision. Appellant urges that, although Howard's own negligence had placed him in peril, the other two requisites for the application of the doctrine were missing; and that Elnora had no actual knowledge that Howard was in danger, and had no clear chance to avoid the collision. Howard's testimony that Elnora raised her head and appeared to be looking at him and following him with her eyes supports the finding that she knew Howard was there; and the finding that the driver of the car which was standing still with a dead engine had a clear chance to avoid injuring the person passing in front of the car will not be disturbed.

Appellant is charged with the negligence of the driver, and not with her wilful misconduct. (*Weber* v. *Pinyan,* 9 Cal.2d 226, 229 [70 P.2d 183, 112 A.L.R. 407].)

Appellant urges that "It is also the general rule that a driver who fails to take advantage of the last clear chance to avoid injury to another, has acted with more than ordinary negligence and is guilty of wilful and wanton misconduct."

Wilful misconduct in the operation of a motor vehicle is *intentionally* doing something, or failing to do something, with the knowledge that injury to another will be a probable result of such act or omission. (*Turner* v. *Standard Oil Co.,* 134 Cal.App. 622, 626 [25 P.2d 988]; *Weber* v. *Pinyan,* 9 Cal.2d 226, 232 [70 P.2d 183, 112 A.L.R. 407].) There is no evidence in the instant action from which it could be found that Elnora Thompson *intended* to injure Howard or *deliberately* disregarded his safety. She knew where he was. She told Mrs. Ingram, Howard's mother, that: "I was only going to the grocery store. I had never driven that car before. It died. I started my motor up again and from then on things happened so fast I don't remember." The court could reasonably infer that she had negligently failed to check the controls of the car before pressing the starter. [7] Intention is a question of fact. The evidence in the

record on the instant appeal fully supports a finding of simple negligence on the part of Elnora Thompson. The decisions cited by appellant in this connection have no application to the facts now before us, and it would serve no useful purpose to discuss them here. Elnora Thompson failed to use ordinary care to avoid injury to Howard who was known by her to be in a place of peril, and she is responsible because she had the last clear chance to avoid the injury.

Appellant urges that the judgment against him must be reversed for the reason that the evidence is wholly insufficient to support the finding that defendant Thompson was driving with his permission and consent. In his opening brief, he states: ". . . The sole testimony of plaintiff to support the finding of driving with permission is found in the testimony of plaintiff Howard Leon Ingram, a 14-year-old boy who testified concerning an alleged conversation he had with the defendant Thompson. This testimony was as follows:

" 'Q. Did you have any conversation with either Mrs. Thompson or Mrs. Jenkins regarding Mrs. Thompson's use of the car on that day? A. Mrs. Jenkins said if I had known anything like this was going to happen, I wouldn't have let her borrow the car.'

"Inasmuch as this conversation admittedly took place out of the presence of defendant Tufeld, and there was no agency relationship between Tufeld and Mrs. Jenkins, the answer was clearly hearsay as to defendant Tufeld, and a proper objection on that ground was timely made but erroneously overruled."

Section 1851 of the Code of Civil Procedure provides: "And where the question in dispute between the parties is the obligation or duty of a third person, whatever would be the evidence for or against such person is prima facie evidence between the parties." See also *Standard Oil Co.* v. *Houser,* 101 Cal.App.2d 480, 489 [225 P.2d 539]; and *Nye & Nissen, Inc.* v. *Central Surety & Ins. Corp.,* 71 Cal.App.2d 570, 575 [163 P.2d 100].) Mrs. Jenkins' statement quoted above was, according to Howard's testimony, made when she and Elnora were visiting him in the hospital. The evidence was admissible against Mrs. Jenkins and, therefore, against Tufeld.

Elnora, Mrs. Jenkins' sister, was a member of the Jenkins household for several months before, at the time of, and several months after her collision with Howard. While both

Mrs. Jenkins and her friend testified that Mrs. Jenkins had told Elnora positively not to drive the Buick, those statements are merely evidence in conflict with Mrs. Jenkins' admission and the other circumstances from which the court could have inferred permission. Appellant concedes that he delivered possession of the Buick to defendants Jenkins and made no restrictions on their use of the car or as to who should drive it. The owner's liability under Vehicle Code, section 402, attached to appellant.

The judgment is affirmed.

Doran, J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 11, 1956.