**LINCOLN ALAMEDA CREEK,**
et al., Plaintiffs,

v.

**COOPER INDUSTRIES, INC.,**
et al., Defendants.

**And Related Counterclaims.**

**No. C–91–0272 MHP.**

United States District Court,
N.D. California.

Sept. 29, 1992.

Arthur D. Levy, Ewell & Levy, San Francisco, CA, for Lincoln Alameda Creek, Patrician Assoc. Inc.

Joseph J. Armao, Cynthia L. Koehler, Heller Ehrman White & McAuliffe, San Francisco, CA, for Cooper Industries Inc., McGraw-Edison Co.

Edward E. Martins, Hayward, CA, for Campbell Realty of California, Mary Orsetti.

William J. Monahan, Burriss Monahan & Riley, PC, Mountain View, CA, for Beta Associates, Ferma Corp.

## MEMORANDUM AND ORDER

PATEL, District Judge.

This action involves a third-party complaint brought by defendant, and now third-party plaintiff, Mary Orsetti ("Orsetti"), against third-party defendant, Beta Associ-

ates ("Beta"). Orsetti is seeking indemnification or contribution from Beta for alleged negligence, breach of warranty, and misrepresentation in their preparation of a ground contaminants investigation. This matter is now before the court on Beta's motion to dismiss the complaint and for summary judgment pursuant to Federal Rule of Civil Procedure 56. After careful consideration of the parties' submissions and arguments, the court GRANTS Beta's motion for summary judgment.

BACKGROUND

The facts underlying this third-party complaint are not in dispute. Mary Orsetti entered into an agreement with the plaintiff, Lincoln Alameda Creek ("Lincoln"), for the sale of a piece of property located at 29990 Union City Boulevard, Union City, California. According to the agreement, Lincoln's purchase was conditioned upon its approval of the condition of the soils, sub-soils and groundwater of the property. In October, 1986, Lincoln hired Beta, an environmental consultant, to perform a subsurface soil and groundwater contaminants investigation of the property in order to assist Lincoln in deciding whether to purchase it. This contract between Beta and Lincoln was an oral contract.

Beta was not given a copy of the purchase contract between Lincoln and Mary Orsetti during its investigation of the property, and Lincoln did not discuss its terms with Beta. Beta obtained some information regarding the property from Orsetti's real estate agent, but was not able to get in contact with Mary Orsetti. Beta placed several calls to Orsetti in order to get additional historic information, but these calls were not returned.

The report was completed on November 21, 1986 and was given to Lincoln. Lincoln did not discuss with Beta their intention that the report would be for the benefit of anyone other than Lincoln. Beta was also not informed that Mary Orsetti would review or rely on the report. Beta did not have a contract with Orsetti, and did not give Orsetti any express warranty.

The report stated that Beta's analysis of the land did not reveal any of the "constituents of concern" and therefore they felt the property was clear of contamination. The sale of the land was subsequently completed. Lincoln is presently involved in litigation with Orsetti for the alleged contamination of the property. Orsetti brought this third-party complaint against Beta for its alleged negligence, breach of warranty, and misrepresentation in the preparation of the ground contamination report. Orsetti is seeking indemnification and compensatory damages from Beta.

Beta's motion for summary judgment turns on the following issues: (1) whether Beta owed Orsetti any duty of care in the preparation of the report, (2) whether Orsetti was a third-party beneficiary of the contract between Lincoln and Beta and (3) whether Beta committed any fraud or misrepresentation to the damage of Orsetti.

DISCUSSION

I. *Legal Standard*

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (the nonmoving party may not rely on the pleadings but must present significant probative evidence supporting the claim); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The court's function, however, is not to make credibility determinations. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631.

## II. *Negligence Argument*

An essential element of any negligence claim is a legal duty of care. All persons have a duty "to use ordinary care to prevent others being injured as the result of their conduct. . . ." *Rowland v. Christian*, 69 Cal.2d 108, 112, 70 Cal.Rptr. 97, 443 P.2d 561 (1968). But liability is not automatically imposed on someone for injuries sustained by another person. Rather, a defendant is liable only for those injuries which were reasonably foreseeable to the defendant at the time of the act. *Dillon v. Legg*, 68 Cal.2d 728, 739, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). Whether a duty will be imposed depends on a number of factors, including: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of the injury suffered, (3) the degree of certainty the plaintiff was injured, (4) the connection between the defendant's conduct and the injury, (5) the moral blame attached to the conduct, and (6) the policy of preventing future harm. *Biakanja v. Irving*, 49 Cal.2d 647, 650, 320 P.2d 16 (1958).

Orsetti argues that Beta owes a duty to both Lincoln and herself. As the seller of the property, she was a foreseeable user of the report. Beta knew its findings would affect her decision of whether to sell the property and upon what conditions the sale would be made. Therefore, it was likely that any negligence in the performance of the testing would result in harm to her.

### A. *Accountant Liability Theory*

Orsetti relies on the California decisions which have held accountants liable to foreseeable plaintiffs who rely on negligently prepared financial statements. *See International Mortgage Co. (IMC) v. John P. Butler Accountancy Corp.*, 177 Cal.App.3d 806, 223 Cal.Rptr. 218 (1986); *Bily v. Arthur Young & Co.*, 7 Cal.App.4th 1636, 271 Cal.Rptr. 470 (1990). In *IMC* the court reversed a long line of decisions requiring privity in negligence suits against accountants, and held that tort liability should be delimited only by foreseeability. *IMC*, 177 Cal.App.3d at 820, 223 Cal.Rptr. 218. Therefore, because innocent plaintiffs foreseeably rely on financial statements prepared by independent auditors, the auditors are liable for any negligently prepared statements even though they have no contractual relationship with the plaintiffs. *Id.*

Orsetti likens the position of Beta to that of an accountant, arguing that in both cases, a negligently prepared report will result in harm to foreseeable users. The California Supreme Court, however, recently overruled these appellate court decisions and held that an auditor owes no general duty of care regarding the conduct of an audit to persons other than the client. *Bily v. Arthur Young & Company*, 3 Cal.4th 370, 11 Cal.Rptr.2d 51, 73, 834 P.2d 745, 767 (1992). In applying the *Biakanja* factors set forth above, the *Biley* court stated that the foreseeability rule would result in a large number of expensive lawsuits of questionable merit. *Id.* 11 Cal.Rptr.2d at 72–73, 834 P.2d at 767–68. Therefore, the court opted for a more circumscribed approach to protect investors and returned to the rule of privity. *Id.* at 72–73, 834 P.2d at 767–68. The only exception to the reinstated rule of privity regards that group of specifically intended beneficiaries of the report who are known to the auditor and for whose benefit the report is made. *Id.* at 73, 834 P.2d at 768. This group may recover on a theory of negligent misrepresentation.

Therefore, in order for Orsetti to recover under a general negligence theory, she must prove that Beta owed her a legal duty. But Orsetti has not alleged that she was in privity with Beta. Instead she has relied on the "foreseeability rule" laid out by the accountant cases. This "rule", however, is no longer available.

Orsetti's later attempt to distinguish Beta's contamination report from financial statements prepared by independent auditors is not persuasive. The *Bily* court acknowledged that other groups of professionals, such as engineers, supply information and evaluations for others to use. In order to achieve consistency in the law of negligent misrepresentation, the same approach must be used in suits by third persons claiming reliance on the information and opinions. Therefore, for all groups of information-supplying professionals, liability is limited to

those persons the information is intended to benefit. *See Bily,* 11 Cal.Rptr.2d at 75, 834 P.2d at 769.

In addition, Orsetti presents no authority for the notion that the suppliers of contamination reports are liable to both parties in an agreement to sell a piece of property, regardless of privity. The facts underlying this case are not unique. The preparation of a professional's report—such as a contamination report or an engineer's report—is frequently a condition of sale. Therefore, if both parties to the transaction are ordinarily beneficiaries of such reports, it is quite remarkable that there are no cases on this issue. And the parties cite none.

Moreover, Orsetti has not presented sufficient facts to prove the duty factors set out in *Biakanja*. She has been able to conduct discovery with Lincoln and yet has not come up with any facts to show that Lincoln's contract with Beta was intended to affect Orsetti. She also has not alleged that she even read the report before selling the property. In addition, as the court in *Bily* pointed out, Orsetti could have hired her own environmental consultant to prepare a contamination report for her use. A broad rule of liability is of dubious benefit when an efficient means of self-protection is available. *See Bily,* 11 Cal.Rptr.2d at 72, 834 P.2d at 766.

### B. *"Tort Of Another" Theory*

Orsetti alternatively relies on the theory of the "tort of another" to support her negligence claim. This theory is set out in *Prentice v. North American Title Guaranty Corp.,* 59 Cal.2d 618, 30 Cal.Rptr. 821, 381 P.2d 645 (1963). In *Prentice,* an escrow holder's negligence in closing a land sale forced the sellers to bring a quiet title action against third parties. As part of the same suit, the sellers recovered the attorneys' fees incurred in the action from the negligent escrow holder. This shifting of attorneys' fees was an exception to the general rule that attorneys' fees are to be paid by the party employing the attorney. The exception provides that "[a] person who through the tort of another has been required to [bring or defend an action] against a third person is entitled to recover compensation for ... at-

torneys' fees, and other expenditures thereby suffered or incurred." *Id.* at 620, 30 Cal. Rptr. 821, 381 P.2d 645.

*Prentice* involved the question of awarding attorneys' fees as a measure of damages wrongfully caused by the defendant's improper actions. *Id.* at 621, 30 Cal.Rptr. 821, 381 P.2d 645. But a legal duty of care is still required in order to recover the attorneys' fees under the theory of a "tort of another." In *Sooy v. Peter,* 220 Cal.App.3d 1305, 270 Cal.Rptr. 151 (1990), the plaintiffs brought suit against an attorney for allegedly false representations he made to their attorney. The defendant attorney filed a cross-complaint against the plaintiffs' attorney for his fees incurred in defending the suit on the theory that these costs were attributable to the plaintiffs' attorney's professional negligence in failing to keep the plaintiffs informed. The court refused to award attorneys' fees because the plaintiffs' attorney's professional duty of care did not extend to the attorney/defendant. *Id.*

■ Therefore, the application of the "tort of another" theory does not replace the need to find a legal duty in a negligence claim. This theory only comes into question after the duty has been found and liability has been assessed. Orsetti's reliance on this theory is, therefore, misplaced. In any claim for negligence, the plaintiff must prove that the defendant owed her a legal duty of care.

Orsetti has failed to create a genuine issue of material fact as to whether Beta owed her a duty. Accordingly, Beta's motion for summary judgment regarding the negligence cause of action is GRANTED.

### III. *Intended Beneficiary Argument*

■ In order to recover under a theory of breach of contract and warranty, Orsetti must be an intended beneficiary of the contract between Beta and Lincoln. "For a third party to qualify as a beneficiary under a contract, the contracting parties must have intended to benefit that third party, and their intent must appear from the terms of the contract." *Kirst v. Silna,* 103 Cal.App.3d 759, 763, 163 Cal.Rptr. 230 (1980) (citing Cal.Civ.Code § 1559). The third party bene-

ficiary must show that the contract was made "expressly" for her benefit. *R.J. Cardinal Co. v. Ritchie*, 218 Cal.App.2d 124, 135, 32 Cal.Rptr. 545 (1963). Therefore, Orsetti must show that the contract between Beta and Lincoln was clearly intended to inure to her benefit.

Orsetti argues that since the contract between Beta and Lincoln is not before the court, Beta has not proven that Orsetti was not an intended beneficiary. But there is no written contract between Beta and Lincoln. The contract was oral and its relevant terms have been provided in the Shafer Declaration. According to this declaration, Orsetti was not an intended beneficiary. Beta and Lincoln never discussed the report being produced for the benefit of Orsetti, nor did they intend it to benefit her.

From the available facts, therefore, it is clear that the contract was not made "expressly" for her benefit. Orsetti has had the opportunity to conduct discovery with Lincoln but has not provided any facts to counter Beta's assertion that Orsetti was not an intended beneficiary of the contract. Even if she now says she relied on the contamination report, she has not presented any facts to prove that Lincoln and Beta intended for her to rely on it.

Orsetti also argues that Beta's agreement to test her property included a "warranty of workmanlike service that is comparable to a manufacturer's warranty." *Ryan Stevedoring Co. v. Pan–Atlantic Steamship Corp.*, 350 U.S. 124, 133–34, 76 S.Ct. 232, 237, 100 L.Ed. 133 (1956). *Ryan*, however, involved an action brought by a shipowner against the stevedoring contractor for indemnity on injuries sustained by an employee of the stevedoring contractor from improperly stored cargo. The court found that a "warranty of workmanlike service" was implied into the contract between the shipowner and the contractor. *Id.* *Ryan* is not analogous to the present case because, unlike the parties in *Ryan*, Beta and Orsetti do not have a contractual relationship. Since there is no contract between Beta and Orsetti, a warranty cannot be implied.

Accordingly, Beta's motion for summary judgment regarding the breach of contract and warranty cause of action is GRANTED.

## IV. *Fraud/Misrepresentation Argument*

 One who fraudulently makes a misrepresentation for the purpose of inducing another to act in reliance upon it is liable for the loss caused by the justifiable reliance on the misrepresentation. Rest.2d Torts § 525. The elements which the plaintiff must prove in order to recover on a claim of fraud include: (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage. *Cicone v. URS Corp.*, 183 Cal. App.3d 194, 200, 227 Cal.Rptr. 887 (1986).

 Similarly, the elements of negligent misrepresentation include: (1) misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage. *Fox v. Pollack*, 181 Cal.App.3d 954, 962, 226 Cal.Rptr. 532 (1986). In both of these actions, therefore, Orsetti must prove that Beta intended to induce her reliance on the contamination report and that she did in fact justifiably rely on the report to her detriment.

 The "class of persons entitled to rely upon the representations is restricted to those to whom or for whom the misrepresentations were made. Even though the defendant should have anticipated that the misinformation might reach others, he is not liable to them." 5 Witkin, Summary of Cal.Law (9th ed. 1988) Torts, § 721 at 820. In *Bily v. Arthur Young Co.*, the California Supreme Court adopted the Restatement approach to determine whether there was an "intent to benefit". The *Bily* court reasoned that the language of the Restatement:

> "creates *an objective standard* that looks to the specific circumstances (e.g., supplier-client engagement and the supplier's communications with the third party) to ascertain whether a supplier has undertak-

en to inform and guide a third party with respect to *an identified transaction or type of transaction.* If such a specific undertaking has been made, liability is imposed on the supplier. If, on the other hand, the supplier 'merely knows of the ever-present possibility of repetition to anyone, and possibility of action in reliance upon [the information] on the part of anyone to whom it may be repeated,' the supplier bears no legal responsibility." *Bily,* 11 Cal.Rptr.2d at 75, 834 P.2d 745 at 769–70 (emphasis in original). Liability is limited to those whom the engagement is designed to benefit in order to allow the supplier of information to ascertain the potential scope of its liability and make rational decisions regarding the undertaking.

 Therefore, in order to recover under a theory of negligent misrepresentation, the plaintiff must be an intended beneficiary of the contract. Her reliance on the report is otherwise not justified. As argued in the previous section, Beta was hired by Lincoln, and Lincoln alone, to perform the testing on the property. Lincoln and Beta never discussed the possibility that Orsetti would be relying on the report and Orsetti herself never informed Beta that she would rely on the report. Since Beta was not informed that Orsetti would rely on the report, it would not have been able to include its potential liability to Orsetti in its assessment of whether to prepare the report. Orsetti has not presented any facts to contradict Shafer's declaration as to the specific circumstances surrounding the agreement to prepare the report. Therefore, there is no triable issue of fact regarding Beta and Lincoln's intent to benefit her through the preparation of the contamination report.

Accordingly, Beta's motion for summary judgment regarding the misrepresentation cause of action is GRANTED.

CONCLUSION

The court GRANTS the third-party defendant's motion for summary judgment.

IT IS SO ORDERED.